# In the United States Court of Appeals for the Fifth Circuit

Students Engaged in Advancing Texas; M. F., by and through next friend Vanessa Fernandez; Z. B., by and through next friend S.B.,

*Plaintiffs–Appellees*,

v.

Ken Paxton, in his official capacity as the Texas Attorney General,

*Defendant–Appellant.*

*consolidated with*

Computer & Communications Industry Association,

*Plaintiff–Appellee*,

v.

Ken Paxton, in his official capacity as Attorney General of Texas,

*Defendant–Appellant.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

## APPELLANT'S REPLY IN SUPPORT OF MOTION TO STAY PRELIMINARY INJUNCTIONS PENDING APPEAL

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
(512) 936-1700

William R. Peterson
Solicitor General

Jeffrey A. Stephens
Assistant Solicitor General
Jeff.Stephens@oag.texas.gov

*Counsel for Defendant–Appellant*

Plaintiffs' Response to Texas's Motion to Stay the Preliminary Injunctions ignores key arguments and is unpersuasive in the arguments it does address.

## I.  Equities Favor the State and Public Interest in Enforcement of the Law.

Plaintiffs cannot deny that "[w]hen a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). Plaintiffs' only response to the public's interest in the enforcement of duly enacted laws is to argue that the law is unconstitutional. Resp. 8. Plaintiffs do not deny that if the law is constitutional, the State and people of Texas are suffering irreparable harm.

Plaintiffs argue that the time it took Texas to file its motion for stay pending appeal both in the district court and in this Court is reason enough to deny the motion. *See* Resp. 7-8. But irreparable harm need not necessitate an emergency motion. Some delay in seeking a stay is unavoidable and Plaintiffs cite no authority to suggest that the time it took in this case is disqualifying. Plaintiffs complain that "Texas did not seek relief in this court until nearly five months after SB2420 was to take effect," Resp. 7, but do not note that the stay motions were pending in the district court from their filing on January 23 until they were denied on May 6. The district court only ruled on the State's motions after the State filed letters requesting a ruling so that the State could seek relief from this Court. SEAT Dist. Dkt. 49; CCIA Dist. Dkt. 75. The State moved to stay the injunctions in this Court just nine days after the district court's denial.

The district court injunctions have given app stores and developers nearly six months beyond what the Legislature provided for any necessary tweaking of systems to comply with the provisions of SB2420. Because the injunctions were entered just one week prior to the effective date of the law, app stores and developers *should* have already prepared to follow the new law's mandates to empower parents to protect children. But the irreparable harm of having this vital legislation universally enjoined has not lessened.

A stay of the injunctions continues to be in the public interest. Allowing the law to go into effect will ensure that parents have (1) the opportunity to review the commercial transactions that app stores and developers are proposing and entering into with their children and (2) accurate information about the apps to determine whether or not to consent. Plaintiffs' insistence that they should be able to enter into these transactions with children without being required to involve parents and without any consequences for harmful apps that are knowingly mislabeled underscores the importance of the protections provided by SB2420.

## II. Texas Is Likely to Succeed on Appeal.

### A. SB2420 is content-neutral.

Plaintiffs argue that Texas is incorrect to point out "that '[n]o speech is being singled out or banned by the Legislature, which merely empowers parents.'" Resp. 10 (quoting Mot. 9). But Plaintiffs do not point to any provision that singles out speech or bans it. Empowering parents to make content-based decisions is not a

content-based justification under the law because no provisions ban or restrict any particular speech based on its content.

This case is unlike *Boos v. Barry*, where the Supreme Court considered a law that "prohibits the display of any sign within 500 feet of a foreign embassy if that sign tends to bring that foreign government into 'public odium' or 'public disrepute.'" 485 U.S. 312, 315 (1988). SB2420 is also unlike the law considered in *United States v. Playboy Entertainment Group, Inc.*, which restricted only cable broadcast "channels primarily dedicated to 'sexually explicit adult programming or other programming that is indecent.'" 529 U.S. 803, 811 (2000). Similarly, the law at issue in *Ashcroft v. ACLU* imposed criminal penalties and imprisonment for the online posting of content that was "harmful to minors," and age verification to restrict access by minors was only available as an affirmative defense. 542 U.S. 656, 661-62 (2004).

Further, unlike *Boos*, *Playboy Entertainment*, and *Ashcroft v. ACLU*, in this case no provision of SB2420 is "justified *only* by reference to the content of speech." *Boos*, 485 U.S. at 321. Plaintiffs concede as much when they complain that SB2420 applies to *all* apps, regardless of their content. *See* Resp. 18 (suggesting that Texas should have exempted "political, educational, artistic, and all manner of non-commercial speech"). Requiring parental consent for minors to download apps and make purchases is fully justified by concern for minors forming contracts with these companies without parental consent.

Plaintiffs next argue that "[t]he Act is also content-based because it exempts certain apps (those providing emergency services and standardized testing) based on their content." Resp. 11. Like the district court, Plaintiffs fail to distinguish between

an exemption from one part of the law, i.e., parental consent, and the law as a whole. Plaintiffs neither acknowledge nor attempt to defend the district court's erroneous labelling of the parental consent exemptions as "coverage definitions," *see* Mot. 11-12, but would nonetheless have the exemptions treated as such to shortcut the analysis and apply strict scrutiny to the entire law. Even if the parental-consent exemptions were content-based—and they are not[1]—every provision of SB2420 would have to be considered on its own to determine the level of scrutiny to apply.

Plaintiffs also attempt to distinguish the severability analysis in *Barr v. American Association of Political Consultants, Inc.*, 591 U.S. 610 (2020) (plurality op.). Contrary to Plaintiffs' argument that *Barr*'s severability analysis turned on the government-debt exception being added by amendment, the plurality opinion in *Barr* first holds that "[t]he text of the severability clause squarely covers the unconstitutional government-debt exception and requires that we sever it." 591 U.S. at 629.[2] The plurality then explains that it would reach the same result even without the severability clause because of the presumption of severability. *Id.* at 630. Finally, as a third alternative, the plurality states that it "has long applied severability principles in cases like this one, where Congress added an unconstitutional amendment to a

---

[1] *See* Mot. 12-13. Plaintiffs do not respond to the State's contentions that (1) *Barr v. American Association of Political Consultants, Inc.*, illustrates that an exception for "a call made for emergency purposes" is entirely non-controversial. 591 U.S. 610, 615 (2020) (plurality op.); (2) the State has a compelling interest in exempting emergency services; and (3) the standardized-testing exception to parental consent is not based on the content of speech.

[2] Seven members of the Court agreed that the debt exception should be severed. 591 U.S. at 614.

prior law." *Id.* Plaintiffs attempt to distinguish only *Barr*'s third independent basis for determining that the government-debt exception was severable and do not address the first two.

Plaintiffs also argue that whether strict scrutiny applies is a threshold question separate from severability. Resp. 13. This oversimplification ignores the interaction of these principles illustrated in *Barr*. The content-based government-debt exception was severed, but the exception was not used to justify applying strict scrutiny to the entire law. *Barr*, 591 U.S. at 621, 629. To the extent either exception to the parental-consent provision would fail constitutional scrutiny, it must be severed in accordance with the Act's severability provision and general severability principles.

## B. SB2420 regulates only commercial speech.

Like the district court's injunction orders, Plaintiffs avoid meaningful discussion of SB2420's regulation of commercial speech. The district court's speech analysis was premised on whether "the targeted advertising requirements" constitute a regulation on commercial speech. Mot. 8. But SB2420 does not contain "targeted advertising" provisions. Plaintiffs' Response does not attempt to explain how the district court's injunctions can stand despite this mistake on such a central issue.[3]

Plaintiffs do not deny that every listing of an app on an app store proposes a transaction, including the user agreeing to data collection and privacy policies

---

[3] The district court previously enjoined a different Texas law that contains "targeted advertising" provisions. *See Comput. Commcn's Indus. Ass'n v. Paxton*, 747 F.Supp.3d 1011, 1024 (W.D. Tex. 2024).

associated with the app. SB2420 regulates this proposed transaction by requiring age verification and parental consent for minors, and it regulates this proposed transaction by requiring age-rating information to be displayed for parents to make informed choices on whether to consent. The primary speech at issue, then, is the app listing itself, which proposes a commercial transaction, regardless whether any monetary payment is made for the app.[4] Proposed in-app purchases are also plainly proposed transactions that at most constitute commercial speech.

Plaintiffs focus only on what speech may be contained in the apps themselves. For example, Plaintiffs argue that SB2420 does not merely regulate commercial speech because its provisions "apply to downloading countless varieties of fully protected speech." Resp. 14. But the same concerns with commercial speech inviting minors to enter these contractual relationships apply to all apps, and the law treats all apps identically, regardless of whether they seek to sell protected speech.

Plaintiffs argue this case is not materially different from *Brown v. Entertainment Merchants Association,* 564 U.S. 786 (2011), because SB2420 does not regulate the user agreements that "authorize data collection and set terms for user privacy." Resp. 15. Plaintiffs are incorrect. First, the key distinction is that *Brown* did not involve a transaction other than payment of money for the violent video games targeted by the law. *See* Mot. 8-9.

_____

[4] The fact that payment for these "free" apps comes in the form of companies gaining to users' data and private information only underscores the need for parental consent.

Second, SB2420 does regulate user agreements in multiple ways. For example, section 121.022(f)(1)(D) requires app stores to disclose "the nature of any collection, use, or distribution of personal data that would occur because of the software application or purchase." App stores must also notify parents before significant changes are made to the terms of service or privacy policies of apps for which consent has been given. *See* §§ 121.022(g), .053(a). The Act also imposes duties that include "limiting the collection and processing of personal data to the minimum amount necessary" to accomplish enumerated tasks and "transmitting personal data using industry-standard encryption protocols that ensure data integrity and confidentiality." § 121.025. And an app store violates the Act if it "enforces a contract or a provision of a terms of service agreement against a minor that the minor entered into or agreed to without consent under Section 121.022." § 121.026(a)(1). Elsewhere in their Response (at 20), Plaintiffs acknowledge that SB2420 has "data protection and contract-related provisions." Although SB2420 does not directly dictate all terms of these agreements, it limits and regulates them in other ways, including by prohibiting app stores or developers from entering into these agreements with minors without parental consent.

Finally, the Act need not contain language stating that it is intended to cover only commercial speech, as argued by Plaintiffs (at Resp. 17). A key premise of the law is that every app download and purchase requires acceptance of user agreements. To limit the law to certain apps based on their content would fail to accomplish its goals in regulating those transactions based on commercial speech and would create the very content-based restriction Plaintiffs argue is impermissible.

### C. SB2420 survives at least intermediate scrutiny.

Texas's motion explains the straightforward connections between the State's recognized interests and SB2420's provisions. *See* Mot. 10-11. Rather than dispute these interests or explain how SB2420 does not advance those interests, Plaintiffs merely repeat previous arguments about the law covering more than commercial speech and the district court's statement that Texas did not provide "evidence" connecting the Act to its methods. Resp. 17-19. Plaintiffs also argue the law allows minors to void contracts but do not explain how this eliminates the State's interest in providing parents the opportunity to consent prior to their children entering into them.

### D. Plaintiffs' remaining arguments on likelihood of success are also unpersuasive.

As to severability, Plaintiffs appear to concede that SB2420's age-rating and display provisions could operate without the parental-consent or age-verification provisions, as the Response (at 19-20) argues only that the age-verification and parental-consent provisions could not be severed. Plaintiffs also do not explain why age-verification could not properly operate without the parental-consent provisions. *See* Mot. 18; Resp. 19-20. Plaintiffs also incorrectly suggest (at Resp. 20) that none of the data protection and contract-related provisions could survive. But, as just one example, section 121.025(1)(A) or (B) could be severed without invalidating provisions requiring app stores to limit the collection of personal data to the minimum amount necessary to maintain compliance records or to transmit personal data using encryption. The fact that neither Plaintiffs nor the district court discussed

or considered saving these provisions is evidence enough that the severability clause of the Act was not given effect.

On vagueness, Plaintiffs argue (at Resp. 20) that SB2420's age categories do not track industry-standard age ratings but they do not argue that any minor differences are material. Plaintiffs complain that a material change in the law is different than a material change to a mobile app but cannot deny that "material" is used throughout the law. *See, e.g.*, *Blanchard v. Via*, No. 22-10458, 2023 WL 3316326, at *1 (5th Cir. May 9, 2023) (per curiam) (discussing contract referring to "a material change of any kind"); *Penthol, L.L.C. v. Vertex Energy Operating, L.L.C.*, 149 F.4th 504, 512 (5th Cir. 2025) (using "material changes" to define contract repudiation). Plaintiffs also indicate (at Resp. 21) that they would like the State to give advisory opinions on specific implementation details about "new opportunities to make a purchase," but Texas's motion shows that the Act contains sufficient context to be able to determine the meaning, *see* Mot. 17.

On universal injunctions, Plaintiffs attempt to distinguish the statutory authority of the federal judiciary under the Judiciary Act of 1789 from under 42 U.S.C. § 1983 and *Ex parte Young*, but *Trump v. CASA* nowhere indicates that those authorities could override the limit on the district court's equitable authority. The Supreme Court has not yet addressed any tension in its First Amendment jurisprudence with *CASA*, but the Judiciary Act's limit on authority would apply regardless of the issues in the suit absent applicability of a different statute. In addition, even if enforcement of certain provisions against the app stores could be enjoined, this provides no basis to entirely enjoin all provisions against all app developers.

Finally, the State did not forfeit *Moody*. It was Plaintiffs' burden to ensure that the court evaluates the full scope of the law's coverage and to demonstrate which of the law's applications are constitutionally permissible and which are not. *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) ("The need for [Plaintiffs] to carry [their] burden on those issues is the price of [their] decision to challenge the laws as a whole."). Plaintiffs suggest the *Moody* analysis should be limited to app stores and not developers, Resp. 26, but any analysis of facial invalidity must consider all applications of the statute, including all the apps that are available. Plaintiffs cannot avoid *Moody* by defining the universe of applications to exclude the very speech concerns they raise with respect to developers. Finally, Texas nowhere conceded that SB2420 only has constitutional applications to unprotected speech, only that there are no constitutional concerns whatsoever with regard to that speech.[5]

## Conclusion

For these reasons, this Court should stay the preliminary injunctions pending appeal.

---

[5] Plaintiffs' citations (at Resp. 27) to ROA.25-51703.577 and ROA.25-51703.584 do not support its contention.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

William R. Peterson
Solicitor General

Brent Webster
First Assistant Attorney General

/s/ Jeffrey A. Stephens
Jeffrey A. Stephens
Assistant Solicitor General
Jeff.Stephens@oag.texas.gov

*Counsel for Defendant-Appellant*

## Certificate of Compliance

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,597, excluding the parts of the brief exempted by Rule 32(f) and Fifth Circuit Rule 32.2, according to the word count of Microsoft Word. This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Equity font.

/s/ Jeffrey A. Stephens
Jeffrey A. Stephens