Nos. 25-51073 & 26-50001

# In the United States Court of Appeals
# for the Fifth Circuit

---

STUDENTS ENGAGED IN ADVANCING TEXAS; M.F., BY AND THROUGH NEXT FRIEND VANESSA FERNANDEZ; Z.B., BY AND THROUGH NEXT FRIEND S.B.,

*Plaintiffs-Appellees,*

v.

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS THE TEXAS ATTORNEY GENERAL,

*Defendant-Appellant,*

*consolidated with*

COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION,

*Plaintiff-Appellee,*

v.

KEN PAXTON, IN HIS OFFICIAL CAPACITY AS THE TEXAS ATTORNEY GENERAL,

*Defendant-Appellants.*

---

On Appeal from the United States District Court
for the Western District of Texas, Austin Division

---

BRIEF OF AMICI CURIAE TECHFREEDOM AND INDEPENDENT
SCHOLARS OF YOUTH MENTAL HEALTH AND TECHNOLOGY
IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

---

John Anderson Jung
TECHFREEDOM
1500 K Street NW, Floor 2
Washington, DC 20005
(771) 200-4997
ajung@techfreedom.org
*Attorney for Amici Curiae*
*TechFreedom and Scholars*

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal. In addition to the persons and entities identified in the briefs of Plaintiffs-Appellees in each consolidated case, the following persons may have an interest in the outcome of this case:

- TechFreedom and Independent Scholars of Youth Mental Health and Technology (*amici curiae*)

- John Anderson Jung (counsel for *amici curiae*)

Pursuant to Federal Rules of Appellate Procedure 26.1 and 29(c), and Fifth Circuit Rule 28.2.1, it is hereby certified that TechFreedom is a 501(c)(3) organization, is not publicly traded, and has no parent corporations. No publicly traded corporation owns 10% or more of TechFreedom.

June 24, 2026                                    /s/ John Anderson Jung

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ................................... ii

TABLE OF CONTENTS ................................................................. iii

TABLE OF AUTHORITIES ............................................................iv

IDENTITIES OF AMICI CURIAE, INTEREST IN THIS
    MATTER, AND SOURCE OF AUTHORITY TO FILE ..............1

SUMMARY OF ARGUMENT ..........................................................3

ARGUMENT ...................................................................................4

I.    The Research Does Not Establish That Social Media
    Causes Mental-Health Problems or Addiction in
    Minors. .................................................................................4

II.    Minors Report a Generally Positive Relationship With
    Social Media. The Source of Recent Mental Health
    Declines Lies Elsewhere. .......................................................10

CONCLUSION...............................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786 (2011) ..................... 4, 5, 15

**Other Authorities**

Hunt Allcott et al., *The Effects of School Phone Bans: National Evidence from Lockable Pouches*, (Nat'l Bureau of Econ. Rsch., Working Paper No. 35132, 2026) ....................................................................................... 7

Ian A. Anderson & Wendy Wood, *Overestimates of Social Media Addiction Are Common but Costly*, 15 Sci. Reps. 39388 (2025) ............................................................... 8, 11

Monica Anderson et al., *Connection, Creativity and Drama: Teen Life on Social Media in 2022*, Pew Rsch. Ctr. (Nov. 16, 2022) ........................................................ 10

Sam Bowman, *Kids Are Struggling. Banning Social Media Won't Fix That*, Wash. Post (Feb. 17, 2026) ......................... 6

danah boyd, *Risks vs. Harms: Youth & Social Media*, Medium (Oct. 8, 2024) ................................................... 9

Tyler Cowen, *Stop Trying to Ban Teens from the Internet*, The Free Press (Dec. 9, 2025) ......................................... 6

W. Phillips Davison, *The Third-Person Effect in Communication*, 47 Pub. Op. Q. 1 (1983) ...................................... 12

Mark Enser, *Is Jonathan Haidt's Book Right About Smartphones?*, TES (Sept. 3, 2025) ............................................ 7, 8

## TABLE OF AUTHORITIES
### (Cont.)

**Page(s)**

Michelle Faverio et al., *Teens, Social Media and Mental Health*, Pew Rsch. Ctr. (Apr. 22, 2025) .................................. 10, 11

Christopher J. Ferguson et al., *There Is No Evidence That Time Spent on Social Media Is Correlated With Adolescent Mental Health Problems: Findings From a Meta-Analysis*, 56 Prof. Psych.: Rsch. & Prac. 73 (2025) ...............5

Peter Gray, *#51. Common Core Is the Main Cause of Youth Mental Health Deterioration Since 2010.*, Play Makes Us Human (Aug. 28, 2024) ......................................... 13, 14

Peter Gray et al., *Decline in Independent Activity as a Cause of Decline in Children's Mental Well-Being: Summary of the Evidence*, 260 J. Pediatrics 113352 (2023) .................................................................................... 12

*Health Advisory on Social Media Use in Adolescence*, Am. Psych. Ass'n (May 2023).................................................... 6

*Healthy Minds Study: College Student Depression, Anxiety Decline for Third Consecutive Year*, Univ. of Mich. Sch. of Pub. Health (Sept. 2025) ........................................... 15

Enos Hitchcock, *Memoirs of the Bloomsgrove Family*, (1790) ...................................................................................5

Mike Males, *Parents' abuses and adversities loom so large in teenagers' mental health that obsessing over social media is pointless, a new analysis of our top health survey shows.*, Mike's Substack (Apr. 30, 2026) ........................... 13

Mike Males, *Statement to California legislature: Laws banning teens under age 16 from social media are misguided and wrong*, Mike's Substack (May 11, 2026)............... 13

# TABLE OF AUTHORITIES
## (Cont.)

**Page(s)**

Mike Masnick, *Two Major Studies, 125,000 Kids: The Social Media Panic Doesn't Hold Up*, Techdirt (Jan. 21, 2026) ........................................................................... 6

Kaitlyn Tiffany, *Can Instagram Ruin Your Life? The Jury Will Decide.*, The Atlantic (Feb. 9, 2026) ........................................... 6

Julia S. Vigdal et al., *A Systematic Review of "Helicopter Parenting" and Its Relationship With Anxiety and Depression*, 13 Frontiers in Psych. 872981 (2022) ......................... 13

## IDENTITIES OF AMICI CURIAE, INTEREST IN THIS MATTER, AND SOURCE OF AUTHORITY TO FILE

TechFreedom is a nonprofit, nonpartisan think tank based in Washington, D.C. It is dedicated to promoting technological progress that improves the human condition. It opposes ever-evolving government efforts to meddle in online speech. See, e.g., Br. of TechFreedom, *NetChoice v. Jones*, No. 26-1252 (4th Cir., May 22, 2026) (opposing Virginia social media screentime cap); Br. of TechFreedom, *NetChoice, LLC v. Griffin*, No. 25-1889 (8th Cir., Jan. 27, 2026) (opposing Arkansas social media age-verification law); Br. of TechFreedom, *Bonta v. NetChoice, LLC*, No. 23-2969 (9th Cir., Feb. 14, 2024) (opposing California social media "design" code); Br. of TechFreedom, *Moody v. NetChoice, LLC*, No. 22-277 (U.S., Dec. 7, 2023) (opposing Florida and Texas social media speech codes); Br. of TechFreedom & Prof. Eric Goldman, *Volokh v. James*, No. 23-356 (2d Cir., Sept. 25, 2023) (opposing New York social media "transparency" law).

The following scholars are independent of TechFreedom and experts in youth mental health and technology:

- Anthony Bernier, PhD, is Professor at San Jose State University.

- 1 -

- danah boyd, PhD, is Geri Gay Professor of Communication at Cornell University.

- Allen Copenhaver, PhD, is Assistant Professor at Eastern Kentucky University.

- Will Dobud, PhD, MSW, is Senior Lecturer at Charles Sturt University.

- Christopher J. Ferguson, PhD, is Professor at Stetson University.

- Peter Gray is Research Professor of Psychology and Neuroscience at Boston College.

- Nevin Harper, PhD, is Faculty of Health at University of Victoria.

- Mike Males, PhD, is Senior Researcher at the Center of Juvenile and Criminal Justice.

- David Moshman, PhD, is Professor Emeritus at University of Nebraska—Lincoln.

- William Proctor, PhD, is Visiting Fellow at Bournemouth University.

- Tori Puente is an MLIS Student at San Jose State University.

- Karen Sternheimer, PhD, is Professor at University of Southern California.

- Eoin Whelan, PhD, is Professor at University of Galway.

TechFreedom is authorized to file this brief by Fed. R. App. P. 29(a)(2) because all parties have consented to its filing. No party's counsel authored any part of this brief. No one, apart from TechFreedom and its counsel, contributed money intended to fund the brief's preparation or submission.

## SUMMARY OF ARGUMENT

The district court correctly held that SB 2420 is unconstitutional. In reaching that conclusion, however, the court appeared to accept, without meaningful scrutiny, the premise that social media is harmful or addictive to minors. We write to challenge that premise.

The social-science evidence does not support the claim that social media use causes mental-health harm in young people. The most rigorous research in this area—including the largest meta-analyses and cohort studies—finds either no clinically meaningful association between social-media use and adolescent mental health or correlations so small as to lack practical significance. Claims that social media is "addictive" fare no better. There is no recognized clinical diagnosis of social-media addiction,

and recent experimental research suggests that the addiction framing itself may do more harm than the underlying behavior. Meanwhile, the best available survey data show that the overwhelming majority of teenagers describe their experience with social media as positive or neutral.

None of this is to deny that some adolescents struggle. The evidence, however, strongly suggests that social media is not the cause. Regulatory regimes built on that assumption rest on sand. A court asked to uphold a sweeping speech restriction should demand more than the present moral panic.

## ARGUMENT

### I.   The Research Does Not Establish That Social Media Causes Mental-Health Problems or Addiction in Minors.

Before Texas may restrict targeted speech, it "must specifically identify an actual problem in need of solving." *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 799 (2011). Because Texas claims to want to protect children, it must "show a direct causal link between" the speech it seeks to censor and "harm to minors." *Id.* This it cannot do. At most, the established "effects" of the speech in question "are both small and indistinguishable from effects produced by other media." *Id.* at 800-01.

Every few decades, a new mode of communications stands accused of harming the young. Novels, films, comic books, television, video games, and more—all have had their turn being accused of "poison[ing] the mind[s] and corrupt[ing] the morals of many a promising youth." Enos Hitchcock, *Memoirs of the Bloomsgrove Family*, 186 (1790), tinyurl.com/bdd9myx7 (making this charge against "romances, novels, and plays"); see *Brown*, 564 U.S. at 797 (cataloguing the pattern). Each time, the evidence fails to sustain the alarm. Social media is the latest entry in this tradition—and the pattern holds.

A recent comprehensive meta-analysis of social-media use and youth mental health—covering forty-six studies—concluded that "the current research literature is unable to provide strong evidence for a clinically relevant link between time spent on social media and mental health issues in youth." Christopher J. Ferguson et al., *There Is No Evidence That Time Spent on Social Media Is Correlated With Adolescent Mental Health Problems: Findings From a Meta-Analysis*, 56 Prof. Psych.: Rsch. & Prac. 73, 79 (2025), https://tinyurl.com/3cbjwwnr. Where correlations exist, they fall well below the threshold of practical significance. *Id.*

Two large cohort studies released in early 2026 reinforce the point. One found that the relationship between social-media use and well-being

is not linear: moderate use by minors is associated with better outcomes than either heavy use or no use at all. The other found no correlation between social-media use and teen mental health. See Mike Masnick, *Two Major Studies, 125,000 Kids: The Social Media Panic Doesn't Hold Up*, Techdirt (Jan. 21, 2026), https://tinyurl.com/mvay25pf. These results are not outliers. The American Psychological Association has concluded that "[u]sing social media is not inherently beneficial or harmful to young people." *Health Advisory on Social Media Use in Adolescence*, Am. Psych. Ass'n (May 2023), https://tinyurl.com/wup6j438.

Other meta-analyses and reviews tell the same story. Researchers have spent years searching for evidence that social-media use causes mental-health problems in young people. They "have mostly turned up weak and inconsistent correlations." Kaitlyn Tiffany, *Can Instagram Ruin Your Life? The Jury Will Decide.*, The Atlantic (Feb. 9, 2026), https://tinyurl.com/6kjfewyf. "After much rigorous investigation, the harms are relatively small. Yet in headlines they are reported as major negative effects." Tyler Cowen, *Stop Trying to Ban Teens from the Internet*, The Free Press (Dec. 9, 2025), https://tinyurl.com/59xhpn4x. See also Sam Bowman, *Kids Are Struggling. Banning Social Media Won't Fix That*, Wash. Post (Feb. 17, 2026), https://tinyurl.com/4c8y8axz ("[I]f the strong claims that are sometimes made about the harms of social media

are true, it is remarkable how difficult it is to find consistent evidence to support them.").

Even the data on restricting smartphone use more broadly are equivocal. A recent study on classroom phone bans found that "average effects on test scores are consistently close to zero." Hunt Allcott et al., *The Effects of School Phone Bans: National Evidence from Lockable Pouches* (Nat'l Bureau of Econ. Rsch., Working Paper No. 35132, 2026), tinyurl.com/2ak233us. At least schools have solid grounds to control their environments—as opposed to governments, which have little basis for intruding on the broader parent-child relationship. In any event, such policies are a remedy that does little in search of a problem that barely exists.

Claims about social-media "addiction," meanwhile, are an abuse of that term. In the words of one of the world's leading experts on dopamine and addiction, "there's not a clear-cut definition of what addiction to a phone would be, [so] it is difficult to estimate the prevalence." Mark Enser, *Is Jonathan Haidt's Book Right About Smartphones?*, TES (Sept. 3, 2025). The instruments commonly used to measure social-media "addiction" are themselves suspect. David Ellis, a leading critic of these measures, demonstrated their unreliability by applying the same mathematical formulas used in the addiction literature to construct a

satirical "friendship addiction scale." The result: eighty percent of respondents were deemed "addicted" to their friends. As Ellis observed, that result is "of course . . . nonsense." *Id.* The instruments are calibrated to find addiction everywhere; unsurprisingly, they do. In short, the "addiction" theory underlying laws like SB 2420 lacks both a recognized clinical diagnosis and reliable measurement tools.

Recent experimental evidence confirms the problem. Two researchers found that simply priming participants to think about their social-media use as an addiction reduced their perceived control and increased a perceived inability to cut back—even though only two percent of participants met clinical criteria for addiction risk. Ian A. Anderson & Wendy Wood, *Overestimates of Social Media Addiction Are Common but Costly*, 15 Sci. Reps. 39388 (2025), https://tinyurl.com/44vs8223. In the authors' view, "the perception of addiction likely arises from popular media's frequent labeling of social media as addictive," rather than from any genuinely pathological relationship with the technology. *Id.* The addiction framing does not empower users; it disempowers them, reducing feelings of control and increasing self-blame.

This matters because the addiction narrative increasingly drives the legal framework. Proponents of laws like SB 2420 assume that social media in particular, and smartphones more generally, are defective

products that cause injury. But they are better understood as gateways to a social environment that, like *any* social environment, carries risks. As danah boyd has observed, conflating risk with harm is a category error. See danah boyd, *Risks vs. Harms: Youth & Social Media*, Medium (Oct. 8, 2024), tinyurl.com/4dffsz2x. No social environment is perfectly safe. "Can social media be risky for youth? Of course. So can school. So can friendship." *Id.* The question is not whether social media is risk-free—nothing is—but whether it causes the kind of demonstrable product-defect harm that could justify sweeping restrictions on speech. Risk is something to be identified and managed through socialization, education, and agency. It is not something that can be designed out of existence by legislative fiat.

The State should not treat an ordinary social environment as though it were a toxic hazard. Doing so would disrupt the process of socialization through which young people learn to navigate the world. Fortunately, the First Amendment—and the absence of evidence behind the State's supposed compelling interest in walling off the Internet—stand in the way of such misguided policy.

## II. Minors Report a Generally Positive Relationship with Social Media. The Source of Recent Mental Health Declines Lies Elsewhere.

The panic narrative requires us to believe that social media is ruining a generation. The generation in question tends to disagree.

Pew Research Center has repeatedly surveyed American teenagers about their experiences online. In 2022, the results were striking: seventy-one percent of teens said social media gave them a place to show their creative side, sixty-seven percent said it helped them find support during difficult times, and teens reporting a mostly positive personal experience outnumbered those reporting a mostly negative one by more than three to one (thirty-two percent to nine percent). Monica Anderson et al., *Connection, Creativity and Drama: Teen Life on Social Media in 2022*, Pew Rsch. Ctr. (Nov. 16, 2022), https://tinyurl.com/44wamk7u. The largest group—fifty-nine percent—said social media had neither a positive nor a negative effect on them personally. *Id.*

Pew's 2025 survey, conducted in fall 2024, shows some softening. The share of teens reporting a mostly negative personal effect rose from nine percent to fourteen percent. The share crediting social media as a source of support during difficult times fell from sixty-seven percent to fifty-two percent, and the share describing it as a creative outlet fell from seventy-one percent to sixty-three percent. Michelle Faverio et al., *Teens,*

*Social Media and Mental Health*, Pew Rsch. Ctr. (Apr. 22, 2025), https://tinyurl.com/5y3eyj52. Even so, the data do not support a narrative of catastrophe. Teens reporting a positive personal experience still outnumber those reporting a negative one, two to one (28 percent to 14 percent). The largest group—fifty-eight percent—continues to report no net effect. And seventy-four percent say social media makes them feel more connected to their friends. *Id.*

Notably, this shift in sentiment coincides with years of relentless public messaging—from legislators, litigants, and the Surgeon General—that social media is dangerous and addictive. As discussed above, Anderson and Wood (2025) experimentally demonstrated that exposure to such framing reduces users' sense of control and increases self-blame, even among individuals with no clinical signs of problematic use. Such messaging may itself influence how teens report their experiences. The available research suggests that the trend lines reflect an increase in the salience of the narrative rather than an increase in harm.

Teens are also more likely to say social media harms *other* teenagers—not themselves. Forty-eight percent now say the effect on their peers is mostly negative, up from thirty-two percent in 2022. Michelle Faverio et al., *Teens, Social Media and Mental Health*, Pew Rsch. Ctr. (Apr. 22, 2025), https://tinyurl.com/5y3eyj52. But people

routinely perceive media effects as stronger on others than on themselves. See W. Phillips Davison, *The Third-Person Effect in Communication*, 47 Pub. Op. Q. 1 (1983), https://tinyurl.com/5h73pk6w. For purposes of assessing actual harm, the more probative data point is personal experience. And there, the evidence does not suggest a crisis.

These findings are what one would expect of a normal communications technology: one that most people use without incident, that some people misuse, and that a small number struggle with, typically because of preexisting vulnerabilities rather than the technology itself.

To the extent that teen mental-health indicators have worsened in recent years—and even that claim is contested—the most robust alternative explanations point elsewhere.

A landmark 2023 article in the *Journal of Pediatrics* concluded that "a primary cause of the rise in mental disorders is a decline over decades in opportunities for children and teens to play, roam, and engage in other activities independent of direct oversight and control by adults." Peter Gray et al., *Decline in Independent Activity as a Cause of Decline in Children's Mental Well-Being: Summary of the Evidence*, 260 J. Pediatrics 113352 (2023), https://tinyurl.com/msuu6n92. Children today have far less unsupervised time than previous generations. *Id.* A

systematic review likewise found that "helicopter parenting" is associated with symptoms of anxiety and depression. Julia S. Vigdal et al., *A Systematic Review of "Helicopter Parenting" and Its Relationship With Anxiety and Depression*, 13 Frontiers in Psych. 872981 (2022), https://tinyurl.com/2s4z8tue.

Sociologist Mike Males analyzed a 2024 Youth Risk Behavior Survey by the Centers for Disease Control and found that poor teen mental health "is driven by family abuses and troubles, including parent-age grownups' soaring drug abuse" more so than social media use. Mike Males, *Statement to California legislature: Laws banning teens under age 16 from social media are misguided and wrong*, Mike's Substack (May 11, 2026), https://tinyurl.com/29su5ebk. See also Mike Males, *Parents' abuses and adversities loom so large in teenagers' mental health that obsessing over social media is pointless, a new analysis of our top health survey shows.*, Mike's Substack (Apr. 30, 2026), https://tinyurl.com/4864rj9c ("[S]ocial media use is harmful for a small fraction of teens and adults, and this harm shows up in surveys – albeit at far lower levels than the harm caused by family troubles.").

Schools, too, have failed teenagers: "schooling is a major cause of kids' suffering and changes brought about by Common Core [in 2010] made school more noxious than it had been before." Peter Gray, *#51.*

*Common Core Is the Main Cause of Youth Mental Health Deterioration Since 2010.*, Play Makes Us Human (Aug. 28, 2024), https://tinyurl.com/5ccrmm3r. Rates of kids' suicides correlate with the school calendar, with "much higher rates when school is in session than when it is not." *Id.*



The point is not that any single alternative explanation must be correct. The point is that the "social media causes harm" thesis is only one contender in a crowded field—and, at present, one of the weakest. Indeed, recent data point in the opposite direction: the Healthy Minds Study reports that anxiety and depression among U.S. college students

have declined for three consecutive years, even as smartphone use remains widespread. *Healthy Minds Study: College Student Depression, Anxiety Decline for Third Consecutive Year*, Univ. of Mich. Sch. of Pub. Health (Sept. 9, 2025), tinyurl.com/54w4b528.

When the empirical record is this weak and uncertain, the State has failed to show that its law "is justified by that high degree of necessity which" the Supreme Court has "described as a compelling state interest." *Brown*, 564 U.S. at 804.

## CONCLUSION

The Court should affirm.

June 24, 2026                    Respectfully submitted,

                                 /s/ John Anderson Jung
                                 TECHFREEDOM
                                 1500 K Street NW, Floor 2
                                 Washington, DC 20005
                                 (771) 200-4997
                                 ajung@techfreedom.org
                                 *Attorney for Amici Curiae*
                                 *TechFreedom and Scholars*

## CERTIFICATE OF COMPLIANCE

I certify:

This brief complies with the type-volume limits of Fed. R. App. P. 29(a)(5) because it contains 2,706 words, excluding the parts exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced serif typeface, in 14-point font, using Microsoft Office 365.

<u>/s/ John Anderson Jung</u>

- 17 -

## CERTIFICATE OF SERVICE

On June 24, 2026, a copy of this brief was filed and served on all registered counsel through the Court's CM/ECF system.

/s/ John Anderson Jung